MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
Telephone:     (212) 786-7368
Facsimile:     (212) 786-7369
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------X

| | |
|---|---|
| BERNARD LAM, | **COMPLAINT** |
| *Plaintiff*, | **05 Civ. 10335 (LAP) (KNF)** |
| -against- | **Jury Trial Demanded** |
| CAXTON ASSOCIATES, L.L.C., | |
| *Defendant*. | **ECF Case** |

----------------------------------------------------X

Plaintiff Bernard Lam, by his attorneys, Michael Faillace & Associates, P.C., alleges upon knowledge as to himself and upon information and belief as to all other matters as follows:

**NATURE OF ACTION**

1.     This is an employment discrimination action brought by Mr. Bernard Lam to recover damages against Defendant Caxton Associates, L.L.C. ("Caxton" or "Defendant") for violations of his rights under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Executive Law, §290 *et seq*. (the "Human Rights Law"), and the Administrative Code of the City of New York, §8-107 *et seq*. (the "City Law").

2.     In violation of federal, state and local laws, Caxton took numerous adverse employment actions against Mr. Lam after he submitted a series of complaints of racial discrimination. For example, Caxton failed to pay his bonus, reduced his responsibilities, placed

him on probation for "performance" reasons and created unbearable working conditions for him, and these retaliatory acts caused his constructive discharge.

3. In addition, Caxton breached the terms of an oral employment contract by failing to pay Mr. Lam a year-end bonus of $46,000 in January 2005.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, and 42 U.S.C. § 1981. Supplemental jurisdiction over Plaintiff's Human Rights Law and City Law claims is conferred by 28 U.S.C. § 1367(a).

5. Venue is proper in this District under 28 U.S.C. §1391(b) and (c), because Defendant conducts business and can be found in the Southern District of New York and because the acts and omissions giving rise to this action occurred in the Southern District of New York.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

## PARTIES

7. Plaintiff Bernard Lam is a Chinese adult male who resides in New York County.

8. Defendant Caxton is a corporation organized and existing under the laws of the Delaware that does business within the City and County of New York. Caxton maintains an office at 500 Park Avenue, New York, New York 10021 and employs over 250 individuals.

9. Defendant is subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

10. Caxton is an international trader of currencies, bonds, securities, futures and options. It is one of the world's largest hedge funds in the world and has approximately $11 billion of funds under its management.

11. Caxton utilizes complex systems development and analysis to forecast market trends. On or about May 9, 2002, Caxton hired Mr. Lam as a Quantitative Business Analyst in its information technology group. In that capacity, Mr. Lam's responsibilities were to support traders and customers with existing trading tools, review, recommend, and implement new analytical trading tools, and support business units with various computer software projects. His compensation consisted of a base salary of $75,000 and a bonus of $24,000.

12. On or about July 23, 2003, Caxton issued Mr. Lam a favorable performance review and promoted him to the position of IT Intermediate Quantitative Business Analyst. Caxton retroactively increased Mr. Lam's compensation package, raising his base salary to $87,000 and a issuing him a $30,000 bonus.

13. On or about June 4, 2004, Credit Suisse First Boston ("CSFB") offered Mr. Lam an Assistant Vice President position in its IT-Global Applications Development Division at a salary of $115,000 with an additional bonus. In response to the competing offer and to induce Mr. Lam to remain at Caxton, Mr. Michael Maffatone, the Chief Information Officer, offered to increase Mr. Lam's base salary to $115,000 and provide a year-end bonus of $46,000 (40% of the new base salary) in January 2005. In consideration of the increased compensation package and in reliance upon Mr. Maffatone's promises, Mr. Lam agreed to remain employed at Caxton and declined CSFB's offer of employment.

14. On or about August 2004, Mr. Duncan Henry became Mr. Lam's immediate supervisor.

15. On or about November 30, 2004, while discussing a front-end spreadsheet application with Mr. Henry, Mr. Lam suggested that they include the trader for whom the application was being developed in the testing process. Mr. Lam explained that the trader had

personally requested to participate, had beta-tested prior versions, and was uniquely qualified to provide feedback related to the application's performance and specific functionalities. However, Mr. Henry dismissed Mr. Lam's suggestion, and in a raised voice, attacked Mr. Lam on the basis of his race using a discriminatory remark. In addition, Mr. Henry ordered Mr. Lam not to talk to any of the traders directly. In response, Mr. Lam stated that such a restriction would interfere with his ability to complete his work and informed Mr. Henry that he would discuss the matter with Mr. Maffatone.

16. Immediately after the meeting, Mr. Lam reported the discriminatory remark and treatment to Mr. Maffatone.

17. The following week, on or about December 10, 2004, Mr. Henry asked Mr. Lam, on short notice, to provide a demonstration of the front-end spreadsheet application in order for the trader to provide his feedback. Mr. Lam, while preparing for the demonstration, planned on speaking to the trader to finalize some details. Upon learning of Mr. Lam's intentions to contact the trader, Mr. Henry harassed, berated, yelled, and physically threatened Mr. Lam in front of his peers. Mr. Lam sent an email to Mr. Maffatone and requested to speak to him about the incident.

18. Not having received a response, Mr. Lam walked into Mr. Maffatone's office the following Monday, December 14, 2004, to discuss the incident. Before conducting an investigation or even hearing Mr. Lam's description of the events, Mr. Maffatone concluded that Mr. Lam had acted in an insubordinate manner.

19. As a result, on or about December 15, 2004, Mr. Lam reported Mr. Henry's discriminatory remarks and physical threats to Ms. Donna Bramble in Defendant's human resources department.

*Caxton took Numerous Adverse Employment Actions against Mr. Lam*

20.     Prior to submitting his complaint on November 30, 2004, Mr. Lam had always been included in the interview process for new team members, assisting with the job screening process. However, Mr. Henry removed Mr. Lam from the process after he submitted his complaint, and Mr. Lam was unable to participate in the hiring of four new team members.

21.     After November 30, 2004, Mr. Henry also began isolating Mr. Lam from other team members. Mr. Henry stopped holding weekly team status meetings, and instead met with the other analysts in his office or during other meetings, thereby excluding Mr. Lam.

22.     Mr. Henry frustrated Mr. Lam's ability to complete projects by ignoring his requests for support, failing to provide adequate training, constantly reprioritizing tasks, arbitrarily changing project requirements, and setting unrealistic deadlines.

23.     Mr. Henry mischaracterized and misrepresented Mr. Lam's performance to Mr. Maffatone and other team members.

24.     In addition, Mr. Henry imposed a set of reporting requirements upon Mr. Lam that other direct reports did not have to follow. For example, Mr. Henry ordered Mr. Lam to log all calls he received from traders, even though Mr. Maffatone told Mr. Lam that he did not need to do so.

25.     Furthermore, Mr. Henry selectively disciplined Mr. Lam because he allegedly submitted inaccurate project documentation. Upon information and belief, Mr. Henry did not require other team members to provide such detailed documentation. Nevertheless, Mr. Lam complied with Mr. Henry's request. Because there were no company standards or policies surrounding documentation, Mr. Lam specifically asked Mr. Henry on numerous occasions for

clarification and assistance. However, Mr. Henry ignored his requests and subsequently issued Mr. Lam a probationary notice for incomplete documentation.

26. Caxton also interfered with Mr. Lam's attempt to obtain a different position within the company. On or about December 16, 2004, Mr. Lam ran into Mr. Jay Glasser, a trader for whom Mr. Lam had previously worked and had offered Mr. Lam a position in July 2004. Mr. Lam asked Mr. Glasser if he still had an opening on his team, and Mr. Glasser replied that he would love to have Mr. Lam join his team. Mr. Glasser instructed Mr. Lam to send him an e-mail to formalize the transfer request, and stated that he would do the rest. After discussing the transfer with human resources and Mr. John Forbes, the Chief Financial Officer, however, Mr. Glasser rescinded the offer later that day. A few weeks later, Mr. Glasser apologized to Mr. Lam, stating that he didn't want to get involved with "politics."

27. On January 11, 2005, Ms. Bramble informed Mr. Lam that Caxton had completed its investigation but did not find anything to substantiate his claim. Ms. Bramble suggested to Mr. Lam that he sit down with Mr. Henry and resolve the matter himself.

28. In January 20, 2005, Caxton failed to provide Mr. Lam any bonus payment.

29. On Wednesday, February 9, 2005, Mr. Lam took an approved day off in observance of Chinese New Year. Two days later, Mr. Henry accused Mr. Lam of violating the attendance policy, claiming that he had been tardy six times during the year. When Mr. Lam asked Mr. Henry for the specific dates he supposedly arrived late, Mr. Henry could only provide two dates, February 8th and 9th. Mr. Lam explained that he had been on time on the February 8th, but had merely been away from his desk; when Mr. Lam reminded Mr. Henry that he had been absent for Chinese New Year on February 9th, Mr. Henry disgustedly stated that he would document his tardiness with human resources department in the future.

30. Due to Mr. Henry's allegations that Mr. Lam had violated the attendance policies, Mr. Maffatone issued Mr. Lam a disciplinary warning and ordered him to report to Mr. Henry each morning when he arrived. Upon information and belief, Defendant did not scrutinize the arrival time of Plaintiff's team members in such manner.

31. On or about March 31, 2005, Caxton placed Mr. Lam on a three-month probationary period for alleged "performance" reasons.

32. Caxton constructively discharged Mr. Lam through its numerous retaliatory acts, and Mr. Lam ceased employment with Caxton in or about May 2005.

## FIRST CAUSE OF ACTION
### Violation of Section 1981

33. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

34. At all times material herein, Defendant is an employer within the meaning of Section 1981.

35. On numerous occasions, Plaintiff asserted his rights protected by Section 1981, complaining to Defendant that Mr. Henry had discriminated against him on the basis of his race. Defendant subsequently retaliated against Plaintiff by taking numerous adverse employment actions against him due to his complaints.

36. As a result of Defendant's retaliatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

37. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiffs' rights.

38. Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Violation of the New York State Human Rights Law

39. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

40. At all times material herein, Defendant is an employer within the meaning of the New York State Human Rights Law.

41. On numerous occasions, Plaintiff opposed and complained to Defendant that Mr. Henry had discriminated against him on the basis of his race. Defendant subsequently retaliated against Plaintiff by taking numerous adverse employment actions against him due to his complaints.

42. As a result of Defendant's retaliatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

43. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiffs' rights.

44. Plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the New York City Human Rights Law)

45. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

46. Prior to filing this Complaint, Plaintiffs served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

47. At all times material herein, Defendant is an employer within the meaning of the New York State Human Rights Law.

48. On numerous occasions, Plaintiff opposed and complained to Defendant that Mr. Henry had discriminated against him on the basis of his race. Defendant subsequently retaliated against Plaintiff by taking numerous adverse employment actions against him due to his complaints.

49. As a result of Defendant's retaliatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other reemployment benefits, and has suffered other monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

50. The acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiffs' rights.

51. Plaintiff has been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Breach of Contract

52. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

53. In July 2004, Plaintiff entered into an oral contract with Defendant, in which Defendant agreed to raise Plaintiff's annual base salary to $115,000 and pay him a year-end bonus of $46,000 in January 2005, provided he remain employed with Defendant.

54. In reliance on Defendant's promises and assurances of payment, Plaintiff declined to accept a competing employment offer.

55. Plaintiff fully performed his terms of the agreement and remained employed with Defendant.

56. Defendant refused to pay Plaintiff as agreed.

57. Plaintiff has suffered lost wages, benefits, consequential damages, and mental and emotional pain and suffering as a result of Defendant's breach.

58. Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Promissory Estoppel

59. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

60. Defendant made promises to Plaintiff which it reasonably expected would induce Plaintiff to act in reliance on those promises.

61. Plaintiff did in fact act in reliance on Defendant's promises to him, to his detriment.

62. Defendant is estopped from denying the enforceability of their promises to Plaintiff.

63. Defendant's refusal to enforce its promises has caused damages to Plaintiff in the form of lost wages, benefits and consequential damages.

64. Defendant acted maliciously, wantonly, reprehensibly, in bad faith, and with ill will toward Plaintiff, which has caused injury to plaintiff's mental solicitude and feelings for which he seeks exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and to provide the following relief:

(a) Making Plaintiff whole for all earnings he would have received but for Defendant's retaliatory and unlawful treatment, including, but not limited to, wages, bonus payments, health insurance and other fringe benefits, bonuses, pension, back pay, front pay, and other lost employment benefits;

(b) Awarding Plaintiff compensatory and punitive damages for unlawful retaliation;

(c) Awarding Plaintiff compensatory and consequential damages for breach of contract;

(d) Awarding Plaintiff prejudgment interest;

(e) Awarding Plaintiff the expenses incurred in this action, including costs and attorneys' fees; and

(f) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: New York, New York
December 9, 2005

                MICHAEL FAILLACE & ASSOCIATES, P.C.

                By: _____/s/_____
                  Michael Faillace [MF-8436]
                  90 Park Avenue, Suite 1700
                  New York, New York 10016
                  (212) 786-7368 (phone)
                  *Attorneys for Plaintiff*